NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 04-CV-60-HRW

DAVID GARCIA                                            PLAINTIFF

VS:                  **MEMORANDUM OPINION AND ORDER**

LINDA SANDERS, ET AL.                            DEFENDANTS

This matter is before the Court on the parties' respective motions, the defendants' motion for dismissal or, in the alternative, for summary judgment [Record Nos. 28-29]; and the plaintiff's motion for production of discovery materials [Record No. 34].

BACKGROUND

On April 15, 2004, David Garcia, an individual in the custody of the Federal Bureau of Prisons ("BOP") and confined at the Duluth Federal Prison Camp, in Duluth, Minnesota, filed a verified *pro se* complaint, pursuant to 28 U.S.C. §1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

The plaintiff claimed that while he was imprisoned at the Federal Prison Camp ("FPC") at Ashland, Kentucky, certain BOP staff members (1) discriminated against him based on his country of origin, in violation of the U. S. Constitution, specifically the Fifth Amendment guarantee of equal protection; (2) retaliated against him for exercising his rights under the First Amendment; and (3) engaged in a civil conspiracy in order to cover up their unconstitutional conduct. He named six defendants and demanded damages, including punitive damages, from the defendants individually.

Upon screening the complaint, this Court summarized the petitioner's allegations as follows:

The plaintiff identifies himself as a Mexican American and . . . states that on April 10, 2001, he was transferred . . . to the camp, becoming one of the two Hispanics at FPC-Ashland. On the date of his arrival he was assigned the prison job of being an education clerk, under Defendant Miller, who was the education department supervisor.

By February of 2003, the plaintiff alleges, he was the senior education clerk; in fact, the plaintiff was the only Hispanic in the education department; and his unit team consisted of Unit Manager Robert Spurlock, Counselor Rick Lutz, and Case Manager Bruce Niday. The plaintiff alleges that on February 5, 2003, Defendant Supervisor Miller suddenly terminated him from his job. Miller's explanation was that the termination on was on the instructions of Defendant Unit Manager Spurlock, who had been instructed by the Defendant Warden to implement a new institutional policy. The new policy allegedly called for supervisors to terminate and reassign all inmates who had been in their assigned work details for over nine months. Upon the plaintiff's request to his unit team to post such a policy for study, however, the team refused.

The plaintiff claims to have written two informal complaints about the matter the next day, both to the Defendant Warden and to Camp Administrator Jarvis. Exhibits [hereinafter "Ex."] A and B. By February 18, 2003, when the plaintiff had not heard a response to his two administrative filings, he approached his counselor, Defendant Lutz, who purportedly stated that he would review his complaints when he had time. Additionally, this defendant is alleged to have become rude, stating "If you don't like it around here I will arrange for you to go back with your people across the street," a reference to FCI-Ashland and a racial slur, according to the plaintiff.

The following day at lunch, the plaintiff approached Warden Sanders and Administrator Jarvis about the reason for his termination and Lutz's subsequent delay in processing his informal complaints. He sets out a script of the dialogue purportedly exchanged at that time, as he inquired about the reason for the termination. The plaintiff alleges that the warden responded as follows:

> Yes, I did receive your complaints you directed to my office. This so called new policy you inquired about is not a policy, but nevertheless, I have instructed all my staff members and work supervisors to evaluate every inmate [at FCI- and FPC-Ashland] on the time amount that such inmate has spent working in their assigned work detail and if that supervisor or staff member believes that a particular inmate has gotten too comfortable in their work detail than the supervisor of that specific work detail must assign that inmate to another work detail.

2

Record No. 1 at 3. At the conclusion of the conversation, Defendant Sanders also purportedly said, "We terminated Mr. Garcia's employment at the education department because we can." *Id.*

The plaintiff provides the declaration of another inmate, Brian Keith Hill, who states that there had been a rumor that there was a time limitation on inmates' work details; that the limit only affected Garcia; and that, as to the February 19th luncheon conversation, "I heard the warden specifically state to inmate Garcia 'That inmates did not have any rights.'" Also attached to the complaint herein is the declaration of an inmate named Llewellyn Moore, who states that he, too, had heard a rumor about a policy preventing inmates from holding an assignment longer than nine months and that he witnessed the same heated exchange between the plaintiff and the warden, although he does not claim to have heard what was said. He declares that prison staff "only enforced the policy on inmate Garcia even though there was numerous inmates that had been in there assigned work detail longer than Garcia."

On February 24, after another meeting with Defendant Lutz, wherein the defendant counselor purportedly threatened to send the plaintiff back to "your people"[1] again, the plaintiff moved on to the next level of the BOP administrative process, filing two BP-9 forms to the warden with allegations of discrimination. They were treated as one complaint throughout that process, Administrative Remedy No. 291189. The warden's response reads in pertinent part as follows:

> An investigation into your allegation reveals that several inmates were removed from the Camp Education Detail not because of their amount of time assigned to the detail, but because the detail was over the quota for assigned positions. Furthermore, your Unit Team has consistently dealt with you and all inmates in a fair and impartial manner and there is no indication of bias regarding job assignments or any other issues.

Ex. C, dated March 4, 2003. The plaintiff claims that this purported reason for his termination is false, *i.e.*, several other inmates had not been removed for purported quota reasons. He points out that the warden had been alerted to the discrimination by the plaintiff's initial complaints a full 30 days before responding, and in those 30 days no other inmates were removed from the education detail -- until the day of her response, March 4th. On that date two other inmates, both Caucasians, named Blank and Neal, were also removed from their education clerk jobs. Ex. AR. An attached work change sheet for the next day, however, shows that the education department,

---

[1] In his attached declaration, the plaintiff charges that Lutz "on many occasions directed malice racial expletives toward me upon requesting administrative remedy forms . . in order to belittle, humiliate, and embarrass me."

with Defendant Lutz as part of the unit team approving the assignment, assigned another Caucasian, named Perry, as the education clerk in the plaintiff's old "quarter," as of March 6. Ex. AZ. All of this suggests to the plaintiff that the quota reason for his termination was pre-textual.

The plaintiff describes several instances of what he characterizes as intensifying harassment and/or retaliation[2] as he pursued the matter administratively and later as he prepared the instant lawsuit. On March 14, the plaintiff appealed to the third BOP administrative level, again charging discrimination and a cover-up of the discriminatory reason for the job termination. Additionally, the plaintiff claimed to have suffered retaliation from BOP staff since he began the administrative remedy process, and he requested a transfer away from the retaliation. The Regional Director's response is as follows:

> . . . You allege your termination from the work detail assignment of education clerk was based on ethnic discrimination and request an investigation. You present an additional issue in your appeal which will not be addressed as it was not raised in your Request for Administrative Remedy.
>
> In accordance with Program Statement 5251.05, Inmate Work and Performance Pay, work assignments are based on institutional need and staff may randomly rotate inmate job assignments in order to maintain the security and orderly running of the institution. Based on our investigation, you are appropriately reassigned to the landscape work detail assignment. We find no evidence of discrimination and concur with the decision made at the institutional level.

Ex. D3.

Continuing to claim that there are "numerous Caucasian and African American inmates in the similar situation I find myself in but they haven't lost there

---

[2] One of the instances alleged is another unexpected change in work details. He was purportedly assigned to landscaping but then suddenly shifted to food service, so that he had longer hours and worked seven days per week, in order to "lessen the plaintiff's time at the law library." Additionally, Defendant Niday arranged the plaintiff's transfer to his current location, FPC-Duluth, on October 3, 2003. It was a retaliatory or cover-up maneuver, according to the plaintiff, because the move was contrary to another BOP Policy Statement; it occurred after the plaintiff's family members had made requests for his transfer and were denied (Ex. AA and BB); and he was not permitted a furlough transfer to Duluth, as some African American inmates were given. Finally, the plaintiff claims that Niday placed in his file totally erroneous information about the plaintiff's purportedly having a violent background, which precludes the plaintiff's participation in certain BOP programs.

4

> [*sic*] jobs," the plaintiff went to the final level of appeal. On May 28, 2003, the Administrator for National Inmate Appeals denied the appeal, citing to the same BOP Program Statement; repeating that the plaintiff's job loss was "because the detail was over the quota for assigned positions"; finding no evidence of discrimination; and deferring to the institutional decision that his current work assignment "best meets the needs of the institution at this time." Ex. E3.
>
> . . . As to the civil conspiracy, [the plaintiff] contends that Defendant Miller cannot make work detail changes without the approval of the Unit Team, consisting of Defendants Spurlock, Lutz, and Niday. Also under his theory, after his initial complaint, when the warden discovered Unit Manager Spurlock's discriminatory intent, she turned a blind eye to the injustice and participated in the conspiracy by instructing Spurlock to also dismiss two Caucasian inmates (Blank and Neal). Defendant Niday purportedly joined the conspiracy to further cover up the discrimination by getting rid of the plaintiff; he transferred the plaintiff away from Ashland on October 3, 2003.

Record No. 8 at 1-7. At the end of same Order and for reasons explained therein, the Court dismissed without prejudice one of the plaintiff's three claims, that is, his First Amendment retaliation claim; and two of the defendants, Camp Administrator Tammy Jarvis and Education Department Supervisor Mike Miller. The Court concluded by directing the issuance of summons for the remaining defendants, Warden Linda Sanders; Unit Manager Robert Spurlock; Counselor Rick Lutz; and Case Manager Bruce Niday, in their individual capacities.

DISPOSITIVE MOTION

The defendants, by Assistant United States Attorney, have responded to the complaint with motion [Record Nos 28-29] for dismissal of the instant action for failure to state a claim upon which the Court may grant relief, pursuant to Federal Rule of Civil Procedure 12(b)(6); or in the alternative, entry of judgment in their favor, pursuant to Federal Rule of Civil Procedure 56(b) and (c).

Relying on their own attached declarations, the remaining four defendants flatly deny the plaintiff's allegations. They present their own version of events, insisting that the plaintiff's removal

5

from the education clerk position on February 5, 2003, was not race-based; nor was there a conspiracy to cover up an improper motive. The Warden presents a copy of the January 7, 2003 minutes of a meeting wherein she advised the staff that inmates assigned to a job detail longer than eight or nine months get too close and comfortable and they "are to be switched or reassigned to another detail." She gives several reasons for the 8-9 month job rotation policy generally and further swears as to two considerations in the instant plaintiff's reassignment, as follows:

> . . . [I]n response to my January 2003 directive, the Camp Education Detail evaluated their work detail and determined their work detail showed a significant allotment of inmates assigned to the detail were over the designated quota.
>
> **36**.   My staff at the camp reassigned the inmates based upon the longevity in the position as directed by me in January 2003.

Attached Declaration of Linda Sanders.

Defendant Spurlock supplies two declarations, in the first of which he also swears to there being no improper motive but a consequence of two factors, *i.e.*, the warden's "directive" at the meeting and a subsequent review which showed clerks "well over" the designated quota. "Inmates on the Camp Education Clerk Detail were reassigned based upon longevity in the position." In his supplemental declaration, he swears that at approximately the same time, in addition to the plaintiff, three white prisoners were removed from the education work detail. One was released to a halfway house on January 31, 2003, and the other two were reassigned for the same reason that the plaintiff was removed and reassigned, one on January 16th and the other on February 6th, the same day as the plaintiff's removal. Moreover, the other three prisoners had all worked at the education department less time than the plaintiff.

Finally, the defendants contend that the reason for the plaintiff's transfer was not discriminatory or to cover anything up but to accommodate the plaintiff. They declare that in June

6

of 2003, the plaintiff informed them of his plan to live in Racine, Wisconsin and "reunite with family members" upon his release, rather than continuing with his plan to locate in Chicago at that time. Defendant Niday provides, as Exhibit A, a progress report dated June 2003 and showing Racine as the plaintiff's release location. BOP policy calls for a prisoner's prison location to be within 500 miles of his release location; and his re-designation of Racine as his release location, rather than Chicago, put the Ashland camp beyond 500 miles. Then Duluth became the appropriate assignment because it is within the 500-mile policy and has the same security level.

As to the law, the defendants' memorandum contains case law which, they argue, warrants dismissal of this cause. Against the legal standards for stating constitutional claims, they contend that the plaintiff has failed to state a constitutional claim because he has not presented any specific allegations showing each defendant's actions in discriminating against him or in carrying on the alleged conspiracy; and because even if true, a reference to "your people" by Defendant Lutz,[3] which the defendant denies making, does not state a constitutional violation

Further, the defendants argue that there is no genuine issue of material fact as to the constitutionality of the plaintiff's work reassignment, as there is no legal right to prison employment, no discriminatory intent or impact in the reassignment, nor any corroboration of such a motive. As regards the plaintiff's transfer to Duluth, they again point out that the law is that prisoners have no constitutional or other right to serve sentences in any particular place. Additionally, the move was pursuant to policy and with the plaintiff's concurrence, based on his decision to change his release location from Chicago to Racine.

---

[3] This is the only specific example of the offensive name-calling which the plaintiff has related.

7

Finally, citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny, the defendants claim to be entitled to qualified immunity, as the plaintiff's allegations regarding his work assignment, use of his administrative remedies, and transfer were all pursuant to valid BOP policies. The plaintiff, therefore, cannot demonstrate that they enforced and implemented policies which they knew to be unconstitutional. The defendants point to the materials they have submitted and conclude with a request for summary judgment.

Plaintiff's Response

The plaintiff has filed a response [Record No. 36] in opposition to the defendants' motion, and he also attaches exhibits. He insists that the defendants maliciously discriminated against him based on his Hispanic heritage, and that there has been a conspiracy between the defendants to cover this up.

Accusing the defendants of perjury, the plaintiff claims that the reason given for the reassignment in the BOP administrative proceedings was the warden's directive to rotate jobs of prisoners who have been at their jobs 8-9 months, but in the pleadings herein, the reason given by the warden and the others was the number of the education department's clerks being over a quota. This discrepancy alone, he claims, is evidence of the falsity of the reason for the reassignment and their later conspiracy to cover it up.

As to the transfer to Duluth, the plaintiff denies that he requested or concurred in that decision to transfer him. In fact, he states that the June 23, 2003 prison progress report is a fabricated document, and he attaches, as his exhibit A, a copy of a real one from that time period. It is dated only weeks earlier, May 28, 2003, and it shows no change from the Chicago release plan. The petitioner then explains the reasons that another progress report would not be written so soon.

He also points out that the second, "fictious" one does not contain a signature of his or any staff member's, as is required by policy and as is contained on the valid May report.

The plaintiff also supplies copies of documents which Niday purportedly inserted into his prison records in order to harm him after he pursued the employment complaint against him administratively. These documents (Exhibit R) show that on August 25, 2003, the State of Georgia's Board of Pardons and Paroles sent to the Ashland prison an order of discharge of parole on a man named David Garcia. The Georgia order of discharge recites that a man named David Garcia was released from all further parole obligations on July 9, 2003, after serving sentences and a year of conditional release for two violent crimes. Someone named Witte has written on it, "Inmate claims this record is not his." The plaintiff complains that Defendant Niday put it in his file nonetheless, even though a simple inquiry to the Georgia Department of Corrections, as the plaintiff has evidently made, shows that the Georgia convict was named Fernando Garci Hernandez; he had 5 aliases, only one of which was/is David Garcia; and he does not even look like the plaintiff. Exhibit S. Therefore, the plaintiff seeks injunctive relief to remove the false information from his file.

Finally, the plaintiff also asks that the defendants not be permitted to shield themselves behind the defense of qualified immunity.

The defendants have not filed a reply to the plaintiff's response.

<div align="center">PLAINTIFF'S MOTION</div>

After the defendants' dispositive motion was filed, the plaintiff filed a motion for production of discovery [Record No. 34], arguing that summary judgment is inappropriate at this time. He seeks BOP records about the three inmates who were purportedly reassigned at the same time as he.

<div align="center">9</div>

The plaintiff specifically seeks their names, register numbers, dates of employment in the prison's education department, and copies of their pay records therefor. He states that these documents are crucial to his proving that the defendants are guilty of making false statements and to his making a response to their motion.

### Defendants' Response

The defendants have filed a response [Record No. 35] opposing the motion on the ground that they have pending a dispositive motion based on qualified immunity, and so discovery is inappropriate under *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004).

### DISCUSSION

### Relevant Standards

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

The instant petitioner is claiming a denial of his right to equal protection of the law. As he is challenging the actions of federal officials rather than state actors, the equal protection analysis must proceed under the Fifth and not the Fourteenth Amendment. Even thought the Fifth Amendment does not contain an equal protection clause, the Supreme Court has held that the amendment's due process clause prevents the federal government from "engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" *Schlesinger v. Ballard,* 419 U.S. 498, 500 n.3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (*quoting Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). *See also Nicholas v. Tucker,* 114 F.3d 17, 19 (2nd Cir.1997) ("the

standards for analyzing equal protection claims under either amendment are identical").

The defendants contend that the plaintiff has failed to state a claim upon which this Court may grant relief, and so the action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Well pled allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if there is not law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

Federal Rule of Civil Procedure 12(b)(6) thereafter continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6). In determining a motion for summary judgment, the Court must determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c).

The defendants have urged entry of summary judgment in their favor as an alternative, and they have supplied numerous documentary exhibits and five declarations. When a district court is faced with a motion for summary judgment, the Supreme Court of the United States has directed that

11

the court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

Because the defendants contend both that the plaintiff has failed to meet the applicable standards for a constitutional claim and that they are entitled to qualified immunity, the Court examines the standard for the latter, also. Qualified immunity is described by the Supreme Court of the United States as follows: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818. The Sixth Circuit has set out a tripartite procedure for evaluating claims of qualified immunity, the first step of which is to determine whether a constitutional violation occurred. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Therefore, the question of whether the named defendants are entitled to qualified immunity is the same as the initial question herein, *i.e.*, whether the plaintiff has established that a constitutional violation occurred. The plaintiff has the burden of establishing both that his rights were violated and that the defendants are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Williams v. Mehra*, 186 F.3d 685, 692-93 (6th Cir. 1999) (quoting *Celotex,* 477 U.S. at 322).

With these standards in mind, the Court turns its attention to the record before it.

Application of Standards to Defendants' Motions

The equal protection clause of the Fifth or Fourteenth Amendment prohibits government actors from applying different legal standards to similarly situated individuals. *See, e.g.*, *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985).

With regard to prisons and prisoners, lawful imprisonment deprives convicted prisoners of many rights, but not the right to equal protection of the laws. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Lee v. Washington*, 390 U.S. 333 (1968). Discriminatory intent may be established by showing an unequal application of a prison policy or system, but conclusory allegations of racism are insufficient. *Minority Policy Officers Ass'n v. South Bend,* 801 F.2d 964, 967 (7th Cir.1986).

Absent a compelling state interest, racial discrimination in administering a prison violates equal protection principles. *Black v. Lane,* 824 F.2d 561, 562 (7th Cir.1987) (black inmate stated cause of action by alleging racial discrimination in the assignment of prison jobs); *Harris v. Greer,* 750 F.2d 617 (7th Cir.1984) ("allegation of deliberate racial discrimination in prisoner's job assignments sufficient to state equal protection").

Consistent with the above-stated authority, the Court finds that the plaintiff has stated an equal protection claim sufficiently to withstand the Rule 12(b)(6) motion to dismiss. This is also consistent with the rulings of other district courts on other prisoners' similar allegations of discrimination in job assignments. *Fitzpatrick v. Bergen County Probation Department*, 2005 WL 1126794 (D.N.J. 2005) (only Westlaw citation is currently available) (equal protection claim may proceed); *Cannon v. Burkybile*, 2000 WL 1409852 (N.D.Ill. 2000) (not reported) (same); *Kelley v. Vaughn*, 760 F.Supp. 161 (W.D. Mo. 1991) (equal protection and conspiracy claims permitted to proceed). Therefore, the Court denies the defendants' motion to dismiss for failure to state a claim.

13

The Court has also reviewed the allegations contained in the defendants' sworn documents and the plaintiff's verified complaint, including attachments. The plaintiff has alleged a job reassignment based on a discriminatory intent, relying on the defendants' purported actions, use of ethnic disparaging remarks, and other inmates' assignments, specifically referring to inmates named Blank, Neal, and Perry. The defendants have not mentioned these three persons. Rather, they have all sworn to two legitimate, purportedly non-discriminatory reasons for their actions. Additionally, and consistent with these defendants' blanket denials of name-calling or improper intent, Defendant Spurlock has sworn that three unidentified Caucasian inmates were also removed from the educational detail at approximately the same time as the plaintiff, two of whom were removed for the same reasons as the plaintiff. The plaintiff has now challenged these assertions and seeks documentary evidence.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). Because there has been no discovery herein and there are genuine issues of material fact as to whether a constitutional violation occurred in reassigning the plaintiff, the Court will not grant summary judgment or dismiss based upon qualified immunity grounds. *See James v. Artuz*, 1994 WL 174005 (S.D.N.Y. 1994) (not reported) (genuine issues of material fact exist on plaintiff's equal protection claim and the defendant's entitlement to qualified immunity).

Therefore, the Court will dismiss the defendants' current motions, the denial of summary judgment to be without prejudice to the defendants' later renewing the motion, with or without

14

supplementation, after a period of discovery. The defendants' citation to *Williams v. Kling*, 849 F.Supp. 1192 (E.D. Mich. 1994), *affm'd* 57 F.3d 1072 (6th Cir. 1995), may prove persuasive at a later time. The plaintiff is on notice that he will have "an uphill battle" to prove that a discriminatory motive was the basis of the defendants' actions. *Hill v. Thalacker*, 2004 WL 2730253 at *3 (W.D. Wis. 2002) (not reported); *Shead v. Stiff*, 2003 WL 23211153 at *2 (W.D. Wis. 2003) (not reported).

The Court will also deny the plaintiff's motion for production of the corroborating records. By separate Order, the Court will direct that the instant matter proceed with discovery between the parties, under the guidance of a magistrate judge. He can weigh the confidentiality and security concerns on a variety of evidence which may be forthcoming in discovery.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) The defendants' motions to dismiss and for summary judgment [Record Nos. 28-29] are **DENIED** without prejudice; and

(2) the plaintiff's motion for production of discovery [Record No. 34] is **DENIED**.

This August 19, 2005.



Signed By:
Henry R Wilhoit Jr.
United States District Judge